Dear Mr. McIntyre:
On behalf of the Clerk of the Circuit Court for St. Lucie County, you ask substantially the following questions:
1. Is a tax certificate sold to a non-governmental party following a tax deed application, but prior to the subsequent tax deed sale, a lien of record for purposes of disbursing overbid monies resulting from the tax deed sale pursuant to section 197.582, Florida Statutes?
2. Should the amount necessary to redeem a tax certificate sold under the conditions in Question One be included in the minimum opening bid for the tax deed sale?
3. If the answer to Question Two is negative, should the Clerk of Court use tax deed overbid monies to reimburse the purchaser of a tax deed who subsequently redeems the tax certificate sold after the tax deed application date but prior to the tax deed sale?
In sum:
1. A tax certificate sold to a non-governmental party following a tax deed application, but prior to the subsequent tax deed sale, constitutes a first lien on the property subject to disbursement under the terms of Chapter 197, Florida Statutes. In light of the lack of clear direction regarding such a lien, however, it may be advisable to seek legislative clarification on the matter.
2. The amount necessary to redeem a tax certificate issued after application for a tax deed has been made may not be included in the minimum opening bid pursuant to section 197.502(6), Florida Statutes.
3. In light of the discussion in Question One, no response is necessary.
The questions you pose are based upon a situation where a tax certificate is sold after an application for a tax deed has been filed with the tax collector. The subsequently issued tax certificate apparently is not included in the sums that were paid by the person applying for the tax deed and the governing statutes do not clearly specify how the lien created by such a certificate is to be extinguished. The following discussion is presented in the progression from application and purchase of a tax certificate to application for a tax deed and the subsequent sale and distribution of the proceeds in order to address the three interrelated questions.
Section 197.122, Florida Statutes, states that "[a]ll taxes imposed pursuant to the State Constitution and laws of this state shall be a first lien, superior to all other liens, on any property against which the taxes have been assessed and shall continue in full force from January 1 of the year the taxes were levied until discharged by payment or until barred under chapter 95."[1] Should a property owner fail to pay the tax due on real property and such tax becomes delinquent, "on or before June 1 or the 60th day after the date of delinquency, whichever is later, the tax collector shall advertise once each week for 3 weeks and shall sell tax certificates on all real property with delinquent taxes."[2]
A tax certificate is and represents:
"a legal document, representing unpaid delinquent real property taxes, non ad valorem assessments, including special assessments, interest, and related costs and charges, issued in accordance with this chapter against a specific parcel of real property andbecoming a first lien thereon, superior to all otherliens, except as provided by s. 197.573(2)." (e.s.)
Section 197.432(1), Florida Statutes, provides the framework to be followed for the sale of tax certificates for unpaid taxes:
"On the day and approximately at the time designated in the notice of the sale, the tax collector shall commence the sale of tax certificates on those lands on which taxes have not been paid, and he or she shall continue the sale from day to day until each certificate is sold to pay the taxes, interest, costs, and charges on the parcel described in the certificate. In case there are no bidders, the certificate shall be issued to the county. The tax collector shall offer all certificates on the lands as they are assessed."[3]
The statute further states that the lien created through the sale of a tax certificate may not be enforced in any manner except as prescribed in Chapter 197, Florida Statutes.[4] The tax collector is directed to make a "list of tax certificates sold" indicating the date of the sale, the number of each certificate, the name of the owner as returned, a description of the land within each certificate, the name of the purchaser, the interest rate bid, and the amount for which the sale was made.[5]
Thus, the plain language of the statute makes a tax certificate superior to all other liens, with a stated exception in section 197.573(2), Florida Statutes, not applicable to the instant situation.[6] Section 197.432(2), Florida Statutes, however, states that "[a] lien created through the sale of a tax certificate may not be enforced in any manner except as prescribed in this chapter."
Section 197.502, Florida Statutes, sets forth the requirements of applying for a tax deed by the holder of a tax certificate:
"(1) The holder of any tax certificate, other than the county, at any time after 2 years have elapsed since April 1 of the year of issuance of the tax certificate and before the expiration of 7 years from the date of issuance, may file the certificate and an application for a tax deed with the tax collector of the county where the lands described in the certificate are located. The application may be made on the entire parcel of property or any part thereof which is capable of being readily separated from the whole. The tax collector shall be allowed a tax deed application fee of $75.
(2) Any certificateholder, other than the county, who makesapplication for a tax deed shall pay the tax collector at the timeof application all amounts required for redemption or purchase ofall other outstanding tax certificates, plus interest, any omittedtaxes, plus interest, any delinquent taxes, plus interest, andcurrent taxes, if due, covering the land."[7] (e.s.)
The tax collector must then deliver to the clerk of the circuit court a statement that payment has been made for all outstanding certificates.[8]
When a tax certificate holder applies for a tax deed, the statute contemplates that all outstanding tax certificates will be redeemed or purchased and omitted taxes, delinquent taxes, and current taxes which are due will be paid. At such time, there would be no taxes due and no unpaid taxes for which a tax certificate could be issued. During the period between the application for the tax deed and the execution of the tax deed sale, however, it is feasible that taxes may become due and delinquent. For instance, an application for a tax deed might be made prior to the November 1 due date of a taxable year. The taxes become delinquent on April 1 of the following year. If the tax deed sale for the particular piece of property does not occur before April 1 of the subsequent year in which the taxes became due, a tax certificate could be sold for the delinquent taxes.
Section 197.502(6), Florida Statutes, sets forth the opening bids for a particular property subject to a tax deed sale and pertinent to your questions, subsections (b) and (c) provide:
"(b) The opening bid on an individual certificate on nonhomestead property shall include, in addition to the amount of money paid tothe tax collector by the certificateholder at the time ofapplication, the amount required to redeem the applicant's tax certificate and all other costs and fees paid by the applicant.
(c) The opening bid on property assessed on the latest tax roll as homestead property shall include, in addition to the amount of money required for an opening bid on nonhomestead property, an amount equal to one-half of the latest assessed value of the homestead. Payment of one-half of the assessed value of the homestead property shall not be required if the tax certificate to which the application relates was sold prior to January 1, 1982."[9] (e.s.)
Thus, there is a statutory scheme directing the clerk of the circuit court to include certain amounts in the opening bid for a tax deed sale. There is no mention of taxes that have become due after the application for the tax deed sale or of tax certificates that may have been sold after the application for the tax deed sale being included in the opening bid for the property. Where the Legislature has prescribed the manner in which something is to be done, it effectively operates as a prohibition against its being done in any other way.[10] Thus, I cannot conclude that the opening bid for a tax deed sale may contain any amounts other than those set forth in section 197.502(6), Florida Statutes. Accordingly, the amount of a tax certificate issued after an application for a tax deed has been made may not be included in the minimum opening bid pursuant to section 197.502(6), Florida Statutes.
Section 197.582, Florida Statutes, prescribes the manner in which proceeds from a sale of a tax deed will be disbursed:
"(1) If the property is purchased by any person other than the certificateholder, the clerk shall forthwith pay to thecertificateholder all of the sums he or she has paid, including the amount required for the redemption of the certificate or certificates together with any and all subsequent unpaid taxes plus the costs and expenses of the application for deed, with interest on the total of such sums for the period running from the month after the date of application for the deed through the month of sale at the rate of 1.5 percent per month. The clerk shalldistribute the amount required to redeem the certificate orcertificates and the amount required for the redemption of other taxcertificates on the same land with omitted taxes and with all costs,plus interest thereon at the rate of 1.5 percent per month for theperiod running from the month after the date of application for thedeed through the month of sale, in the same manner as he or shedistributes money received for the redemption of tax certificatesowned by the county.
(2) If the property is purchased for an amount in excess of the statutory bid of the certificateholder, the excess shall be paid over and disbursed by the clerk. If the property purchased is homestead property and the statutory bid includes an amount equal to at least one-half of the assessed value of the homestead, that amount shall be treated as excess and distributed in the same manner. The clerk shall distribute the excess to the governmental units for the payment of any lien of record held by a governmental unit against the property. In the event the excess is not sufficient to pay all of such liens in full, the excess shall then be paid to each governmental unit pro rata. If, after all liens of record of the governmental units upon the property are paid in full, there remains a balance of undistributed funds, the balance of the purchase price shall be retained by the clerk for the benefit of the persons described in s. 197.522(1)(a), except those persons described in s. 197.502(4)(h), as their interests may appear. The clerk shall mail notices to such persons notifying them of the funds held for their benefit. Any service charges, at the same rate as prescribed in s. 28.24(10), and costs of mailing notices shall be paid out of the excess balance held by the clerk. Excess proceeds shall be held and disbursed in the same manner as unclaimed redemption moneys in s. 197.473. In the event excess proceeds are not sufficient to cover the service charges and mailing costs, the clerk shall receive the total amount of excess proceeds as a service charge." (e.s.)
This statutory language recognizes the existence of "other tax certificates" in addition to the ones purchased by the certificateholder and directs the clerk to distribute such amounts in the same manner as he or she would for county owned tax certificates. The "other tax certificates," however, are "other certificates on the same land with omitted taxes" which would appear to apply to tax certificates held by the county. When there are no bidders on the sale of a tax certificate, the certificate is issued to the county which is not required, as private individuals, to pay the taxes in order to receive the certificate.[11] Such taxes become "omitted taxes" which must be added to the required minimum bid.[12] Thus, while there is mention of "other tax certificates" in the disbursement of tax deed sale proceeds, it is not clear that the term would apply to a tax certificate issued after the application for the tax deed has been made.
This office has recognized under a predecessor statute to section 197.582, Florida Statutes (section 194.22, Florida Statutes), that outstanding tax certificates held by persons other than a county or municipality should be treated in the same manner as tax liens held by a county or municipality.[13] The opinion observed that the purchaser of a tax lien or certificate obtains the tax lien of the county and "holds the same in that capacity." In Attorney General Opinion 62-59, it was posited that such a tax certificate or lien is on parity with that of other like certificates held by the county and that privately held certificates may be redeemed "through the clerk of the circuit court of the respective counties wherein such lands are situated."[14] It was concluded that the distribution of the proceeds of a tax deed sale is, in effect, a redemption of the tax liens as the proceeds will allow.
While the statutes have been amended and renumbered, there would appear to be no change which would preclude the application of the same rationale set forth in the 1962 opinion. I would note, that Rule 12D-13.065, Florida Administrative Code, governing the disbursement of proceeds from a tax deed sale, states:
"(2) If the property is purchased for an amount in excess of the minimum bid of the tax deed applicant, the excess shall be distributed to governmental units for the payment of any lien of record held by a governmental unit against the property. If the excess is not sufficient to pay all of such liens in full, then the governmental units shall be paid the excess on a pro rata basis.Liens of governmental units not satisfied in full shall survivethe issuance of the tax deed.[15]
(3) Any remaining funds held by the clerk shall be distributed to those persons described in Section 197.502(4), F.S., except persons listed in Section 197.502(4)(h), F.S., as their interests may appear. Therefore, the distribution scheme must observe the priorities of recordation of the liens or interests in the public records of the County. The excess funds must be used to satisfy in full to the extent possible each senior mortgage or lien in the property before distribution of any funds to any junior mortgage or lien. Any valid lien in the property is entitled topayment before any payment is made to the titleholder ofrecord." (e.s.)
The rule further provides for the clerk to send notices to the persons listed in section 197.502(4), Florida Statutes, which, in pertinent part, alerts lienholders that funds derived from the sale will be used to satisfy in full, to the extent possible, each senior mortgage or lien in the property before distribution of any funds to any junior mortgage or lien.
While the statutory scheme today recognizes that any person may redeem a tax certificate after the certificate is issued, but before a tax deed sale, in the situation you have posed, the tax deed sale would not appear to cover the tax certificate which is issued after the application for the tax deed has been made. There is no provision in the statutes or attendant administrative rules which specifically addresses the inclusion of such a tax certificate in the minimum bid required for the sale of a tax deed or the redemption of a subsequently issued tax certificate from the proceeds of such a sale. The existence of an outstanding tax certificate which was not included in the sale, however, is not extinguished by the tax deed sale and apparently operates as a first lien after the proceeds of the tax deed sale have been disbursed pursuant to the statute. As such, it would appear that any excess or overbid funds derived from the sale of the tax deed may be used to initially extinguish any governmental held liens, then as a priority lienholder, any privately held tax certificates of record.[16] It may be advisable for the purchaser of a tax deed to determine whether there are outstanding tax certificates on the purchased property and to redeem such certificates in order to obtain clear ownership of the property.[17]
As noted above, however, it does not appear that the Legislature contemplated that the situation you have posed would occur. It may be advisable, therefore, to seek legislative clarification of this matter.
Sincerely,
 Pam Bondi Attorney General
PB/tals
[1] See also Rule 12D-13.011, Fla. Admin. C., reiterating that on January 1 of each year, all taxes levied pursuant to the constitution and laws of this state become a first lien on the taxable property, superior to all other liens on the property and continuing in full force and effect until discharged by payment or until barred by Ch. 95 or 197, Fla. Stat.
[2] Section 197.402(3), Fla. Stat.
[3] See also Rule 12D-13.045, Fla. Admin. C., providing direction for the sale of tax certificates for unpaid taxes.
[4] Section 197.432(2), Fla. Stat.
[5] See s. 197.432(8), Fla. Stat.
[6] Section 197.573(2), Fla. Stat., provides:
"This section shall apply to the usual restrictions and covenants limiting the use of property; the type, character and location of buildings; covenants against nuisances and what the former parties deemed to be undesirable conditions, in, upon, and about the property; and other similar restrictions and covenants; but this section shall not protect covenants creating any debt or lien against or upon the property, except one providing for satisfaction or survival of a lien of record held by a municipal or county governmental unit, or requiring the grantee to expend money for any purpose, except one that may require that the premises be kept in a sanitary or slightly condition or one to abate nuisances or undesirable conditions."
[7] Section 197.102(2), Fla. Stat., defines "Omitted taxes" as "those taxes which have not been extended on the tax roll against a parcel of property after the property has been placed upon the list of lands available for taxes pursuant to s. 197.502." These are parcels of property on which the county holds the tax certificate and for which there were no bidders at the tax deed sale.
[8] Section 197.502(4), Fla. Stat.
[9] Section 197.502(8), Fla. Stat., provides that taxes are not to be extended against property listed as "lands available for taxes," but in each year the taxes that would have been due are treated as omitted taxes and added to the required minimum bid for a tax deed sale. See also s. 197.542(1), Fla. Stat., stating:
"The amount required to redeem the tax certificate, plus the amounts paid by the holder to the clerk of the circuit court in charges for costs of sale, redemption of other tax certificates on the same lands, and all other costs to the applicant for tax deed, plus interest thereon at the rate of 1.5 percent per month for the period running from the month after the date of application for the deed through the month of sale and costs incurred for the service of notice provided for in s. 197.522(2), shall be considered the bid of the certificateholder for the property."
[10] See Alsop v. Pierce, 19 So. 2d 799, 805-806 (Fla. 1944);Dobbs v. Sea Isle Hotel, 56 So. 2d 341, 342 (Fla. 1952); andThayer v. State, 335 So. 2d 815, 817 (Fla. 1976).
[11] See s. 197.432, Fla. Stat.
[12] See s. 197.502(8), Fla. Stat.
[13] See Op Att'y Gen. Fla. 62-59 (1962).
[14] Section 194.01, Fla. Stat. (1961).
[15] See s. 197.552, Fla. Stat., stating in pertinent part that "a lien of record held by a municipal or county governmental unit, special district, or community development district, when such lien is not satisfied as of the disbursement of proceeds of sale under the provisions of s. 197.582, shall survive the issuance of a tax deed."
[16] See Rule 12D-13.065, Fla. Admin. C., regarding disbursement of proceeds of a tax deed sale and providing that if the property is purchased for an amount in excess of the minimum bid of the tax deed applicant, the excess is to be distributed first to pay governmental held liens of record and then to those persons described in s. 197.502(4), Fla. Stat., as their interests may appear; the distribution scheme must observe the priorities of recordation of the liens or interests in the public records of the county, with excess funds used to satisfy in full to the extent possible each senior mortgage or lien in the property before distribution of any funds to any junior mortgage or lien. Any valid lien in the property is entitled to payment before any payment is made to the titleholder of record.
[17] See Rule 12D-13.051, Fla. Admin. C., setting forth the rules governing redemption, purchase, or transfer of tax certificates; the term "redemption" refers to the procedure by which the legal titleholder of property, or someone acting in behalf of the legal titleholder, pays to the tax collector the amount required to cancel and invalidate a tax certificate or portion thereof (as allowed by these rules) which is otherwise valid.